## The Early & Daniel Company v. Carr.

(Decided March 2, 1923.)

## Appeal from Mason Circuit Court.

1. Customs and Usages—Strictly Construed, and Not Allowed to Operate Beyond Class of Persons or Contracts in Regard to Which they Prevail.—Common law customs and trade usages in derogation of the common law, such as a custom among grain dealers under which contract of sale may be automatically extended so as to bind both parties until canceled or terminated, must be strictly construed, and nothing will be held to be within them which they are not proved tó cover, and they will not be allowed to operate beyond the class of persons or contracts in regard to which they prevail.

2. Customs and Usages—When Telephone Contract Not Confirmed by One Party Custom Held not to Authorize Recovery.—Where a custom and usage among grain dealers relied upon required both parties to a sale made over the telephone to promptly confirm the transaction by writing, but an alleged seller did not confirm the alleged sale, and ignored the other's communication, there could be no recovery even under the custom.

ALLEN D. COLE and H. W. COLE for appellants.

SLATTERY & REES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

Appellant, the Early & Daniel Company, is and has been for many years past dealing in hay, grain, feed, flour and salt, with its place of business in Cincinnati, Ohio. R. A. Carr operates a milling business at Maysville and buys and sells grain. On November 19, 1919, Carr called up a member of the appellant firm and inquired the price of wheat on that date, saying he had a car load which he would sell. Appellant responded that the price f. o. b. cars at Maysville for number two red wheat on that date was $2.24 per bushel. At that time it was worth $2.32 per barrel in Cincinnati, the freight making the difference in price. Appellant contends that it purchased a car of wheat from appellee Carr through the telephone conversation to which we have referred. Appellee Carr denies this and says he did not sell nor offer to sell a car of wheat to appellant but merely inquired the price which was given to him, and promised to let appellant company know within a few days whether the price would be sat-

isfactory. On the next day appellant company sent to appellee Carr a letter of confirmation but it received no reply to this. Carr sent no letter of confirmation. According to the evidence, the rules and customs among grain dealers require a delivery within ten days after the sale, where the contract is for a prompt delivery. It is further shown by the evidence that the buyer has the right at the expiration of the ten days to cancel, or extend the contract, or buy wheat in lieu of that purchased from the seller. The seller has the right to fill his contract at any time until the same is cancelled, or the purchaser has bought wheat in open market in place of that covered by the contract.

It is further stated by witnesses for appellant company that by custom among grain dealers the contract may be automatically extended by the mere writing of a letter within the ten days by the purchaser, inquiring of the seller as to when the shipment will be made, and it is also in evidence that the purchase made over the telephone must be immediately confirmed by writing by both parties before it becomes binding.

The wheat was not delivered and appellant company brought this suit against appellee Carr to recover $610.00, which was the difference between the contract price of the wheat, $2.24 per bushel, and the open market price on June 20, 1920, which is proven in evidence to have been $2.85 per bushel. This claim for $610.00 is based on the theory that appellant company had by writing the letter of December 1, 1919, to appellee Carr inquiring when he would make the shipment, automatically extended the contract, and bound each party to the telephone conversation until one or the other of them should cancel or otherwise terminate it by one of the methods above mentioned.

The evidence seems to prove that the custom requires the purchaser, if he desires to extend the contract beyond the ten days included in the expression "prompt delivery," to give to the seller within said time notice that he intends to extend the contract. This was not done, for the contract as claimed by appellant, entered into on November 19th, was to expire on November 29th. The letter of appellant was not written until December 1st.

We have, however, reached the conclusion from all the evidence that the custom and usage among dealers in grain at that time and in the locality of Cincinnati required both the buyer and the seller, where the trade was made over the telephone, to promptly confirm the said

.transaction by writing delivered to the opposite party, otherwise the telephone communication did not amount to a binding obligation and either one might ignore it. Confirmation by one of the parties was not sufficient. In this case appellee Carr did not assent to nor confirm the sale of the car of wheat and did not send a writing to appellant company within the ten days, or at all indicating that he acquiesced in and agreed to sell a car of wheat to appellant, or that he desired to confirm the telephone communication, upon which appellant relied for the purchase of the wheat. It is a well established rule that all customs, such as the one under consideration, and which are in derogation of the common law, must be strictly construed. The same is true of usages of trade. Nothing will be held to be within them which is not proven they covered, and they will not be allowed to operate beyond the class of persons or contracts in regard to which they prevail. 17 C. J., p. 477. In this view of the case, even under the custom, we think the instructions given by the court to the jury were much more favorable to appellant company than it was entitled to have. In fact, the court should have peremptorily directed the jury to find and return a verdict for appellee Carr. There being no cross appeal the judgment is affirmed.

Judgment affirmed.